**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ORLY KONYO,<br><br>                 Plaintiff,<br><br>v.<br><br>ARS NATIONAL SERVICES, INC., JOHN DOES 1-50 (fictitiously named), and ABC CORP. 1-50 (fictitiously named),<br><br>                 Defendants. | Civil Action No: 16-2452-SDW-SCM<br><br>**OPINION**<br><br><br>March 22, 2018 |

**WIGENTON**, District Judge.

Before this Court are Plaintiff Orly Konyo's ("Plaintiff" or "Konyo") and Defendant ARS National Services, Inc.'s ("Defendant" or "ARS") Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary judgment is **DENIED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a resident of New Jersey, incurred a financial obligation in the amount of $14,188.11 to Chase Bank U.S.A., N.A. ("Chase") after she became unable to make payments on a Chase credit card. (Dkt. Nos. 46-4 ¶¶ 1-6; 46-3 Ex. A; 48-1 ¶ 2.) On March 3, 2015, Chase

1

referred the obligation to ARS, a debt collection company. (Dkt. Nos. 48-1 ¶ 1; 46-3 Ex. A.) On April 10, 2015, ARS sent the following written notice (the "Letter") to Plaintiff:

> Chase Bank U.S.A., N.A. has hired ARS to work with you to resolve the above-referenced account. We are offering to settle your account for $4,965.00. If you cannot make the settlement payment by the dates below, please contact us to discuss all your payment options.
>
> The settlement arrangement is as follows:
>     Payment One: $1,655.00 by 4/25/2015
>     Payment Two: $1,655.00 by 5/25/2015
>     Payment Three: $1,655.00 by 6/25/2015
>
> We reserve the right to treat any missed or late payment as a cancellation of the agreement. We are not obligated to renew this offer.
>
> …
>
> When your final payment is received, we will advise our client so that it may notify any credit reporting agencies to which it reports of the updated status of the account. IRS requires certain amounts that are discharged as a result of the cancellation of debt to be reported on a Form 1099-C. You will receive a copy of Form 1099-C if one is required to be filed with the IRS. Chase wants you to know that this debt settlement may affect your ability to open a new account or borrow money from Chase in the future. In most cases, Chase does not approve applications from customers who haven't paid the account balance back in full – even when an agreement is made for a partial payment to satisfy a debt.
>
> If you have any questions, please contact your account representative at (866) 888-9096. Our office hours are Monday through Friday, 6:00 a.m. – 7:00 p.m. (Pacific Time).

(Dkt. No. 46-3 Ex. A.)[1]

On April 7, 2016, Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Special Civil Part, Bergen County against Defendant alleging the Letter violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Dkt. No. 1 Ex. A.) Defendant removed to this Court on May 2, 2016. (Dkt. No. 1.) Plaintiff amended her complaint on May 4, 2017. (Dkt. No. 28 ("Am. Compl.").) The parties filed cross-motions for summary judgment on

---

[1] ARS made several other settlement offers to Plaintiff, none of which are at issue here. (*See* Dkt. No. 48-1 ¶¶ 4-8).

January 10, 2018.  (Dkt. Nos. 46-48.)  Opposition papers for both motions were filed January 25, 2018 and replies on February 5, 2018.  (Dkt. Nos. 51-54.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

**III.    DISCUSSION**

The FDCPA, 15 U.S.C. § 1692, *et seq.*, provides a private cause of action to consumers who have suffered "the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Courts analyzing FDCPA claims apply an objective "least sophisticated debtor" standard, which is lower than "simply examining whether particular language would deceive or mislead a reasonable debtor." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (internal quotation marks omitted)). As the Third Circuit has articulated, this "lower standard comports with a basic

4

purpose of the FDCPA . . . to protect 'all consumers, the gullible as well as the shrewd,' 'the trusting as well as the suspicious,' from abusive debt collection practices." *Id.* However, a debtor cannot disregard responsibilities or adopt "bizarre or idiosyncratic interpretations of collection notices," as the standard "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Wilson*, 225 F.3d at 354–55 (internal quotations and citations omitted). "[W]hether the least sophisticated debtor would be misled by a particular communication is a question of law . . . ." *Smith v. Lyons, Doughty & Veldhuius, P.C.*, Civ. No. 07–5139, 2008 WL 2885887, at *3 (D.N.J. July 23, 2008); *see also Devito v. Zucker, Goldberg & Ackerman, LLC*, 908 F. Supp. 2d 564, 569 (D.N.J. 2012).

To prevail on an FDCPA claim, "a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The parties do not dispute that Plaintiff is a consumer, Defendant is a debt collector, or that Defendant's Letter was an attempt to collect a debt under the FDCPA. Therefore, the only issue before this Court is whether the Letter violated a provision of the statute.

Section 1692e of the FDCPA generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and includes a non-exhaustive list of prohibited conduct including "threat to take any action that cannot legally be taken or that is not intended to be taken," "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," and using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a

5

consumer." 15 U.S.C. § 1692e and (5), (8), (10). A communication is false, deceptive or misleading "when it can reasonably be read to have two or more meanings, one of which is inaccurate or contradictory to another requirement." *Devito*, 908 F. Supp. 2d at 571 (citing *Wilson*, 225 F.3d at 354); *see also Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008).[2]

A.

Plaintiff alleges that two separate sections of the Letter violate § 1692e. The first is the section that states: "When your final payment is received, we will advise our client so that it may notify any credit reporting agencies to which it reports of the updated status of the account" ("Credit Reporting Language"). (Dkt. No. 46-3 Ex. A.) Plaintiff claims this Credit Reporting Language is deceptive and misleading because it "implies that Plaintiff's credit reports will only be updated upon final payment, but no time sooner, even if part or substantially all of the debt is paid off," which Plaintiff argues "misstates Chase's credit reporting obligations under the law,"

---

[2] In addition to § 1692e, Plaintiff's Amended Complaint alleges that the Letter violates §§ 1692d and 1692f. (Am. Compl. ¶¶ 55-61.)

Section 1692d prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Prohibited conduct includes threats or use of violence, use of obscene or profane language, publication of lists of debtors, phone calls made with the "intent to annoy, abuse, or harass any person at the called number," and "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d. Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Despite including these additional provisions in her Amended Complaint, Plaintiff's briefs address only § 1692e. Moreover, the record fails to reflect any factual support for violations of §§ 1692d and 1692f. Plaintiff does not allege, nor has she pointed this Court to record evidence that ARS contacted her on the phone, publicized her personal information, threatened her or employed obscene or profane language in its attempts to collect on Plaintiff's debt. Nor does the record reflect that Defendant acted unconscionably. Rather, the record shows that ARS made multiple written settlement offers, which Plaintiff rejected. Because the record provides no support for a finding that the Letter violated §§ 1692d and 1692f and because Plaintiff failed to raise the violation of those provisions in her papers, this Opinion addresses only the alleged violations of § 1692e.

specifically, the Fair Credit Reporting Act ("FCRA"). (Am. Compl. ¶ 26; Dkt. No. 46-1 at 10-11.) [3]

The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Tauro v. Capital One Fin. Corp.*, 684 Fed. Appx. 240, 241-42 (3d Cir. 2017) (citation omitted). To that end, the FCRA "places certain duties on those who furnish information to consumer reporting agencies." *SimmsParriss v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). Under the FCRA, an entity that "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the [entity]'s transactions or experiences with any consumer" has a duty to correct and update information in order to provide the consumer reporting agencies with any information "necessary to make the information provided . . . complete and accurate . . . ." 15 U.S.C. § 1681s-2; *see also Tauro*, 684 Fed. Appx. at 242. An additional consumer protection provided by the FCRA generally requires that "accounts placed

---

[3] Although the record does not indicate that Chase is a reporter under the FCRA, several court decisions have treated Chase as such. *See, e.g.*, *Muehlenberg v. Experian Info. Sol., Inc.*, Civ. No. 17-392, 2017 WL 6622837, at *1-3 (N. D. Cal. Dec. 28, 2017); *Blazo v. Chase Bank USA, N.A.*, Civ. No 10-1800, 2013 WL 5674357, at *4 (D. Nev. Oct. 17, 2013). In addition, the Letter treats Chase as a FCRA reporter by noting that Chase will be the entity responsible for notifying "any credit reporting agencies to which it reports of the updated status of the account." (Dkt. No. 46-3 Ex. A.)

ARS's argument that the Letter is not deceptive because ARS is not a data reporter under the FCRA is of no moment. (*See* Dkt. No. 51 at 16-17 (arguing that ARS has no statutory obligation to update CRAs).) The test for a violation of the FDCPA turns not on the specifics of an entity's legal obligations, but rather whether the communication between a debt collector and a debtor could mislead or deceive the least sophisticated consumer. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) (noting that "[t]ruth is not always a defense under [the least sophisticated consumer] test, since sometimes even a true statement can be misleading") (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir.2009)); *see also Irvine v. I.C. Sys., Inc.*, 176 F. Supp. 3d 1054, 1062 (D. Colo. 2016), *reconsideration denied*, 198 F. Supp. 3d 1232 (D. Colo. 2016).

for collection or charged to profit and loss" be removed from consumer credit reports after seven years. 15 U.S.C. § 1681c.

Pursuant to the provisions of the FCRA, any payment made by Plaintiff, whether under the Letter's proposed settlement offer or on some other schedule, should trigger an update to one or more consumer reporting agencies in order to accurately reflect the status of Plaintiff's debt. However, the language of the Letter could mislead the least sophisticated consumer into believing that updates to her credit would only occur after the final payment on the debt was made.[4] This could, as Plaintiff notes, "improperly . . . induce consumers to make full, upfront payments under a payment plan or accelerate payments towards the outstanding balance in order to get the benefit of updated credit reporting." (Dkt. No. 46-1 at 13.) Further, the Letter may mislead a consumer into believing that the debt would remain on her credit report for more than seven years. Therefore, the Credit Reporting Language of the Letter violates § 1692e of the FDCPA.

B.

Plaintiff next claims that the Letter's statement that the "IRS requires certain amounts that are discharged as a result of the cancellation of debt to be reported on a Form 1099-C" ("IRS Reporting Language") also violates the FDCPA. (Dkt. No. 46-3 Ex. A.) Plaintiff claims that the

---

[4] ARS's suggestion that the "language only states that Defendant will advise its client, Chase, regarding Plaintiff's account if Plaintiff actually accepts the settlement offer, so that Chase may report to the CRAs" cannot be reconciled with the Letter's explicit statement that "**[w]hen your final payment is received**, we will advise our client so that it may notify any credit reporting agencies to which it reports of the updated status of the account." (Dkt. No. 46-3 Ex. A (emphasis added).)

This Court finds ARS's position that the Letter does not "preclude communications before the final payment," (Dkt. No. 51 at 18), equally unavailing. While the Letter does not explicitly state that ARS could not communicate with Chase before final payment, the reasonable reading of the language is that it will not do so until the debt has been satisfied. That lack of clarity creates ambiguity that could mislead the least sophisticated consumer in the manner prohibited by § 1692e.

8

IRS Reporting Language is deceptive and misleading in violation of Section 1692e because it fails to delineate the exceptions to debt discharge reporting requirements. (Dkt. No. 46-1 at 17-19.)

The IRS requires the reporting of the discharge of indebtedness as follows:

> **(a) Reporting requirement—(1) In general.** Except as provided in paragraph (d) of this section, any applicable entity (as defined in section 6050P(c)(1)) that discharges an indebtedness of any person (within the meaning of section 7701(a)(1)) of at least $ 600 during a calendar year must file an information return on Form 1099–C with the Internal Revenue Service. . . .
>
> **(d) Exceptions from reporting requirement**— . . .
>
> **(2) Interest.** The discharge of an amount of indebtedness that is interest is not required to be reported under this section.
>
> **(3) Non-principal amounts in lending transactions.** In the case of a lending transaction, the discharge of an amount other than stated principal is not required to be reported under this section. For this purpose, a lending transaction is any transaction in which a lender loans money to, or makes advances on behalf of, a borrower (including revolving credits and lines of credit).

26 C.F.R. § 1.6050P-1(a), (d).

It is clear that IRS regulations provide for exceptions to the reporting of indebtedness, and further, that those exceptions are not reflected in the language of the ARS Letter. The least sophisticated consumer, given a general statement of the law regarding reporting of the discharge of indebtedness, but not given information about the exceptions to that law, could be confused as to what the tax consequences will be for settling a debt, or "be deceived into thinking that [ARS] must or will report certain settlement amounts to the IRS, even when it does not intend to, or would not be required to . . . ." *Velez v. Enhanced Recovery Co., LLC*, Civ. No. 16-164, 2016 WL 1730721, at *3 (E.D. Pa. May. 2, 2016); *see also Broderick v. Viking Client Serv., Inc.*, Civ. No. 17-1827, 2017 WL 4269962, at *14 (D.N.J. Sept. 26, 2017) (finding IRS reporting language which stated that the IRS "requires financial institutions to annually report to the IRS discharges of debt"

of greater than $600 could confuse the least sophisticated consumer because that language "can be read as a definitive reporting requirement").

Defendant, however, argues that the Letter is true as to Plaintiff, because if Plaintiff had accepted any of Defendant's settlement offers she "would have received a Form 1099-C . . . because the principal amount that would be forgiven would always be over $600.00." (Dkt. No. 51 at 13.) The truth of the Letter, however, is not the standard under which this Court determines whether Defendant violated the FDCPA. Rather, this Court is required to apply an objective test that examines "whether the statement deceives or misleads, not whether it is true or false." *Good v. Nationwide Credit, Inc.*, 55 F. Supp. 3d 742, 748-49 (E.D. Pa. 2014) (applying this objective test to a communication regarding IRS reporting to determine if it violated the FDCPA); *see also Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (recognizing that violations of 1692e are reviewed objectively and with an eye to what the least sophisticated consumer would understand). Here, the least sophisticated consumer, reading the IRS Reporting Language could conclude that ARS would be required to report the cancellation of a debt in all circumstances, no matter the amount, composition, or nature of the debt, when, in fact, there are exceptions to the reporting obligation. Therefore, the Letter's IRS Reporting Language violates § 1692e of the FDCPA.

Because Defendant's Letter could deceive or mislead the least sophisticated debtor, summary judgment for Plaintiff is appropriate.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Summary Judgment is **DENIED**. An appropriate order follows.

          ___/s/ Susan D. Wigenton_____
          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Steven C. Mannion, U.S.M.J.
            Parties